# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Omar Ali Olmos,<br><br>  Defendant. | No. CR-23-01516-001-TUC-SHR (BGM)<br><br>**Order Accepting R&R Re: Defendant's Motion to Suppress** |

Pending before the Court is a Report and Recommendation ("R&R") (Doc. 42) issued by United States Magistrate Judge Bruce G. Macdonald recommending the Court deny Defendant's Motion to Suppress (Doc. 19). Defendant Olmos filed an Objection. (Doc. 45.) For the reasons below, the R&R is accepted over Defendant's Objection.

## I.    STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Untimely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## II.    BACKGROUND

The Court adopts the following unobjected-to facts as set forth in the R&R:

<u>Investigatory Stop</u>
On September 6, 2023, Border Patrol Agent John Dapuzzo was driving south on State Route 286 toward the United States-Mexico border outside of Sasabe, Arizona. (Tr. 10:4-18.1) On the drive, Dapuzzo noticed a car overloaded

with passengers driving in the opposite direction. (*Id.* 10:17-19.) Not recognizing the vehicle, and finding an overloaded car driving into a desolate area suspicious, Dapuzzo turned around and began to follow the vehicle. (*Id.* 8:15-17; 11:7-19.) Once behind the sedan, Dapuzzo ran a records check using the car's license plate number and the state of issuance. (*Id.* 11:19-20; 23:13-24.) One of the records-check returns indicated that the car had just crossed the Sasabe Port of Entry with only one occupant—the car's driver, Omar Olmos. (*Id.* 11:19-23.)

As soon as Dapuzzo caught up to Olmos's vehicle, Olmos reduced his speed and began to watch his mirrors. (*Id.* 12:4-10.) As Olmos's car approached the intersection of Highway 286 and Arivaca Sasabe Road, his car came to a near complete stop to make the turn onto Arivaca Sasabe Road. (*Id.* 12:17-21.) Shortly after Olmos made the turn, Dapuzzo activated the emergency lights on his marked Border Patrol truck and initiated a traffic stop. (*Id.* 13:9-11.) After Dapuzzo activated his lights, Olmos abruptly pulled over to the side of the road. (*Id.* 14:13-14.) Upon pulling over, the passenger-side doors of Olmos's car suddenly opened and multiple passengers wearing camouflage pants fled into the desert. (*Id.* 14:14-16; 15:17-22.)

<u>Evidentiary Hearing</u>

On January 3, 2024, the Court held an evidentiary hearing on Olmos's motion to suppress. (*See* Doc. 36.) At the hearing, Agent Dapuzzo and Defendant Olmos both testified. (Tr. 6:14-28:18; 30:14-42:23.)

On direct examination, Dapuzzo testified that he has worked for the United States Border Patrol going on fourteen years. (*Id.* 6:14-16.) Over the past six years, he has been stationed in Tucson, Arizona, where he has been part of the Highway Interdiction Team and the Border Apprehension and Interdiction Team. (*Id.* 6:25-7:6.) While in Tucson, Dapuzzo has been tasked with teaching Border Patrol trainees as a field training officer. (*Id.* 7:8-9.) He affirmed that part of his responsibilities as a Border Patrol agent is to develop reasonable suspicion pending immigration vehicle inspections. (*Id.* 7:14-17.)

Dapuzzo affirmed that he is familiar with the area surrounding the Sasabe Port of Entry. (*Id.* 7:21-23.) He described the north side of Sasabe as having a total of three, occupied residences and one store. (*Id.* 8:2-4.) There are two

individuals that reside year-round in Sasabe and every other house is abandoned. (*Id.* 8:6-8.) According to Dapuzzo, Sasabe is an area known for alien smuggling and is one of the easiest places to work vehicle traffic because it is such a desolate area. (*Id.* 8:8-16.) Sasabe is close to the border wall, and the south side of Sasabe is where migrants frequently come to start their journey into the United States. (*Id.* 8:17-19.) There are only three ranches north of Sasabe, and everything else is open desert. (*Id.* 8:19-22.) Dapuzzo estimated that the average travel time from the Port of Entry to milepost nine on Highway 286 is within ten to fifteen minutes. (*Id.* 9:4-8.)

Dapuzzo recalled that on September 6, 2023, he was driving south on his way to the border to assist with a family unit, when he encountered Olmos driving north on the same road. (*Id.* 10:12-18.) Dapuzzo could see through the windshield of Olmos's vehicle that there were "a lot of people in the car" and that it was "clearly overloaded." (*Id.* 10:18-11:6; 21:12-15.) He testified that when he sees cars that are not from the area, riding heavy in the rear, it is a good start to reasonable suspicion of alien smuggling. (*Id.* 11:9-17.)

On cross-examination, Dapuzzo explained that he ran a records check of Olmos's license plate through his phone. (*Id.* 23:20-24.) When Dapuzzo runs records checks through his phone, he inputs the license plate number and the plate's state of origin. (*Id.*) The records return indicates whether the vehicle is stolen, the make of the vehicle, and whether the vehicle has crossed the border within the last thirty to ninety days. (*Id.* 23:24- 24:21.) When Dapuzzo ran Olmos's license plate, the return indicated that Olmos had crossed the border at the Sasabe Port of Entry about ten to fifteen minutes earlier. (*Id.* 24:3-6.) Dapuzzo testified that he followed Olmos a half mile to a mile after Olmos turned right onto Arivaca Sasabe Road before activating his lights. (*Id.* 25:22-24.)

On direct examination, Olmos testified that at the time in question, he had been working as a ride-share driver for Uber and Lyft for a year and a half. (*Id.* 38:14-19.) He confirmed that he was driving a 2017 Hyundai Sonata, which had approximately 196,000 miles. (*Id.* 31:1-7.) Olmos conceded that he crossed from Mexico into the United States on September 6, 2023, through the Sasabe Port of Entry. (*Id.* 31:8-15.) He testified that he witnessed a marked Border Patrol vehicle rapidly approach his car from behind around

> mile mark nine on State Route 286. (*Id.* 33:9-23.) Olmos recalled that he moved his car partially to the side of the road to let the vehicle pass, and that when it did not pass, he returned his car to the center of the road. (*Id.* 33:24-34:9.)
>
> Olmos stated that while his car's front windshield was not tinted, his rear and back windows were. (*Id.* 34:18-23.) To prevent his car from stalling on the road, Olmos explained that he has to slow down to slow speeds to make turns. (*Id.* 35:14-17.) During his slow turn onto Arivaca Sasabe Road, Olmos observed Agent Dapuzzo activate his emergency lights. (*Id.* 35:22-25.) Olmos then pulled his car over to the side of road where there was a clearing. (*Id.* 36:4-7.) Olmos asserted that at no time was he swerving within his lane, neither before nor after his turn onto Arivaca Sasabe Road. (*Id.* 36:17-25.)
>
> On cross-examination, Olmos testified that his car's front and rear windows were marked with Lyft emblems to designate that he was a ride-share driver. (*Id.* 38:20-23.) When presented with a photo of the rear of his vehicle taken on the day in question that failed to show a Lyft emblem in the window, Olmos stated that the emblem was damaged when he got his car detailed but that the emblem on the front windshield was still there. (*Id.* 40:8-20.) Olmos then admitted that he was not working as a ride-share driver on the day in question. (*Id.* 40:21-24.) It was his day off. (*Id.* 41:11.) He also admitted that he crossed the Sasabe Port of Entry by himself that day and that when he was pulled over by Agent Dapuzzo, he had other passengers in his car. (*Id.* 42:10-15.) Olmos agreed that he did not pick up the passengers for Lyft or Uber because it was his day off. (*Id.* 42:16-23.)

(Doc. 42 at 2–4.)

In October 2023, Defendant filed a motion to suppress "all evidence obtained as a result of [an] illegal stop." (Doc. 19 at 10.) Specifically, Defendant argued the officer lacked reasonable suspicion to conduct a stop because he relied on "ordinary, safe, and legal behaviors with a few innocuous details." (*Id.* at 9.) After an evidentiary hearing on the motion, (Doc. 36), Judge Macdonald issued his R&R recommending the Court deny Defendant's Motion to Suppress because, based on the totality of the circumstances, the Government demonstrated reasonable suspicion for the stop. (Doc. 42 at 6–7.)

- 4 -

Specifically, Judge Macdonald referenced the agent's fourteen years of experience, knowledge of the area of the stop, and Defendant's failure to refute the following facts:

> Dapuzzo explained that before activating his emergency lights, he observed: a foreign, overloaded vehicle driving north into a desolate area on a stretch of road known for alien smuggling (*id.* 10:17-11:17); that there were so many passengers in the car that it appeared to be riding heavy in the rear (*id.*); that Olmos drove at unusual speeds in an atypical manner—slowing down considerably once Dapuzzo was behind him, closely watching his mirrors, and nearly coming to a complete stop to make a right turn onto an adjacent road (*id.* 12:4-25); and that Olmos had been the sole occupant of his car only minutes before he was spotted with his car overloaded with passengers (*id.* 8:23-9:11; 11:23-12:3).

(*Id.* at 7.)

Defendant filed an Objection arguing Judge Macdonald erroneously relied on the agent's testimony stating the car "was riding heavy in the rear and was overloaded with passengers" because "[n]othing indicates the vehicle had any issues with its normal capacity for a vehicle of its type." (Doc. 45 at 2.)  According to Defendant, "[t]here were a total of four people in the [car]" and the car "has the capacity to carry five people." (*Id.*)  The Government did not file a Response.

Here, Defendant has filed an untimely objection which may preclude review. *See Reyna-Tapia*, 328 F.3d at 1121.  Nevertheless, the Court finds Defendant's argument challenging the R&R meritless.  The agent testified he saw through the windshield of the car there was a driver, passenger, and multiple people in the backseat of the car and the back end of the car sat a little lower than it should.  (Doc. 41 at 10–12, 14, 21.)  The agent also testified "five [people] ran out of the car wearing partial camouflage." (*Id.* at 14.)  Contrary to Defendant's suggestion, this would mean six people were in a car with the capacity for five people.  However, irrespective of the number of people the car could carry, it stands to reason a car will ride lower the more people it has. The agent testified he saw a foreign car driving in an atypical manner in a desolate area known for smuggling and the car had been seen with only one person a few minutes prior when it

- 5 -

crossed the border. Hence, based on his training and experience, the agent could make the inference multiple people were in the car because it appeared to be riding lower than it should be. This inference is supported by the agent's testimony and the Court agrees with Judge Macdonald that the agent had reasonable suspicion to conduct a stop based on the totality of the circumstances.

Accordingly,

**IT IS ORDERED** Magistrate Judge Bruce G. Macdonald's Report and Recommendation (Doc. 42) is **ACCEPTED** in its entirety.

**IT IS FURTHER ORDERED** Defendant's Motion to Suppress (Doc. 19) is **DENIED**.

Dated this 4th day of April, 2024.

Honorable Scott H. Rash
United States District Judge